IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KRYSTAL MARSHALL, and
MILTON J. DAVISON,

        Plaintiffs,

v.                                  Case No. 17-1090-JTM

BENJAMIN BURNLEY, *et al.*,

        Defendants.

**MEMORANDUM AND ORDER**

Plaintiffs filed this *pro se* action against a multitude of defendants, asserting various claims including disability discrimination, battery, false arrest, conspiracy, outrage, and deprivation of constitutional rights. (Dkt. 1). The matter is now before the court on a number of pending motions.

**I. Summary of Complaint**

According to the complaint, Krystal Marshall is a disabled individual with a "congenital renal system abnormality" as well as an "orthopedic foot condition that impairs mobility." She serves as a home care assistant to Milton Davison, who is "a legally deaf disabled American veteran" with numerous "service-connected physical disabilities that … [limit] his … mobility." (Dkt. 1 at 4).

The complaint appears to assert claims arising out of two unrelated incidents. One incident allegedly occurred on May 3, 2016, when Marshall attended a concert at the Cotillion Ballroom in Wichita. Breaking Benjamin, a five-member alternative rock

band from Pennsylvania, was playing. At some point, according to the complaint, "the Cotillion staff and production crews (Rainbow) under [the] direction of Breaking Benjamin erected a double metal barrier blocking the dining seating and restaurant areas, bathroom facilities, and exits…." (Dkt. 1 at 7). Marshall alleges that "upon disclosing her disability and seeking accommodation access to the bathroom facility and dining seating areas[,] [she] was publically subjected to sexual battery[,] multiple assaults and batteries, kidnapping, and false arrest/imprisonment, under the direction of Breaking Benjamin by Rainbow, and Cotillion staff…." (*Id*. at 8).

The complaint alleges that an "unidentified Rainbow employee male deliberately grabbed [plaintiff] [and] pushed her," and that with assistance from unidentified defendants Molly Doe and Female Doe, they restrained her and "committed sexual battery," with Molly Doe pushing plaintiff and kicking her from behind while Marshall was on the floor. These three individuals allegedly flipped Marshall on her back, pushed her down and pinned her, and Molly Doe then "grabbed [Marshall's] bra with her shirt and pulled it hard upwards to deliberately and forcibly expose [Marshall's] breasts to the crowd near the barrier…." (*Id*. at 9).

The complaint alleges a second incident occurred on September 3, 2016, when plaintiff Milton Davison went to the Dueling Piano Bar in Wichita, where he was served alcohol and was then allegedly "kick[ed] out because his disabilities became 'disturbing' to a customer." (Dkt. 1 at 7). Davison went outside, and then "returned seeking access to the bathroom facilities to relieve himself … and to administer prescribed medication." He was then allegedly "placed under false arrest by [defendant

Bob Adams, a Wichita police officer] without an interpreter for the hearing impaired … and taken to be drugged under false pretenses with toxic levels of part of lethal [sic] injection cocktail wherein he almost went into cardiac syncope and stroke, and died." (*Id*.).

Count One of the complaint alleges a violation of 42 U.S.C. § 12132 or § 12182 of the Americans with Disabilities Act (ADA), by excluding or denying benefits of a public entity or the facilities of a public accommodation to a qualified person with a disability. Count Two alleges claims for sexual battery and assault and battery based on the incident at the Cotillion. Count Three alleges claims for false arrest and false imprisonment based upon the separate incidents at the Cotillion and the Dueling Piano Bar. Count Four alleges civil conspiracy against Breaking Benjamin, Hollywood Records, Inc., Catherine Leslie (identified as the owner of the Cotillion), Dueling Piano Bar, the Wichita City Council, and Sedgwick County. Among other things, plaintiffs allege these defendants "acted in agreement to cover-up illegal activities involving Wells Fargo Bank" and others, and to cover up criminal complaints filed by plaintiffs, and that defendant Hollywood Records, Inc. is involved because plaintiffs' minor daughter "was kidnapped from Redding, California by Penn State officials with forged Probate documentation purporting to be from the state of New Hampshire," and Breaking Benjamin performs regularly at Penn State and is aided by "Hollywood Productions" [sic] on a contractual basis. (Dkt. 1 at 13). Count Five alleges the tort of outrage based on the Cotillion and Dueling Piano Bar incidents. Count Six alleges a

claim under 42 U.S.C. § 1983 for deprivation of constitutional rights including "disregard[ing] the civil rights of disabled individuals" and unlawful arrest. (*Id*. at 16).

## II. Standards Governing Rule 12(b)(6) Motion to Dismiss

Several of the defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.' " *The Estate of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1106–07 (10th Cir. 2016), *cert. denied sub nom. Lockett v. Fallin*, 137 S. Ct. 2298 (2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss, the court must accept as true all well-pleaded allegations and view those allegations in the light most favorable to the non-moving party. *See Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. Moreover, "[t]he tenet that a court must accept as true all of the allegations contained a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### III. Breaking Benjamin Defendants (Dkt. 42)

Defendants Benjamin Burnley, Jason Rauch, Keith Wallen, Shaun Foist, Aaron Bruch, and Breaking Benjamin move to dismiss the complaint for failure to state a claim upon which relief can be granted. (Dkt. 43 at 6). They also seek dismissal for insufficient service of process under Fed. R. Civ. P. 12(b)(5). Plaintiffs have not specifically responded to the motion, although they filed a "Motion to object to Benjamin's [sic] Burnley of Council [sic]," (Dkt. 58), as well as responses to another defendant's motion to dismiss. (Dkts. 60, 69).

The court finds Count One of the complaint fails to state a valid claim for relief against any of the Breaking Benjamin defendants. The complaint does not allege that these defendants were a public entity, and it thus fails to state a claim under 42 U.S.C. § 12132. *See* 42 U.S.C. § 12131(1) (defining "public entity" as a state or local government, an instrumentality of a state or local government, or the National Railroad Passenger Corporation or other commuter authority). Nor does the complaint allege facts showing these defendants owned, leased, or operated a place of public accommodation within the meaning of 42 U.S.C. § 12182. The complaint's sole allegation in that regard is that Cotillion and Rainbow staff allegedly set up a metal barrier "under [the] direction of Breaking Benjamin." The latter allegation is unexplained and conclusory, as is much of the plaintiffs' complaint, and fails to show that these defendants had authority that made them the operator of a public accommodation. Counts Two and Three contain no allegations against the Breaking Benjamin defendants that could make them liable for the acts alleged. Count Four, the civil conspiracy count, consists almost entirely of

conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). It fails to a state a valid claim for relief against any of the defendants. Count Five asserts the tort of outrage but fails to allege any act by the Breaking Benjamin defendants that could support such a claim. Finally, Count Six, which invokes 42 U.S.C. § 1983, fails to state a claim for relief against the Breaking Benjamin defendants because it does not allege that these defendants acted under color of state law. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 315 (1981) (to state a claim under § 1983, the complaint must allege that the defendants acted under color of state law). Accordingly, the court grants the motion to dismiss (Dkt. 42) for failure to state a claim upon which relief can be granted. Moreover, the court determines that any attempt by plaintiffs to amend the complaint to remedy the foregoing defects would be futile. Accordingly, the dismissal of the claims against these defendants will be with prejudice.

**IV. Hollywood Records, Inc. (Dkt. 47)**

The only count of the complaint mentioning Hollywood Records, Inc. is Count Four, which alleges a civil conspiracy. As indicated above, Count Four contains no factual allegations to plausibly support a conspiracy claim against this or any of the other named defendants. The response to the motion only verifies that plaintiffs are alleging a stream-of-consciousness conspiracy that states no valid claim for relief:

> Plaintiffs state the (D) Hollywood is trying to dismiss to prevent discovery; downplaying the Penn State scandal as "so-called." Plaintiffs state that Hollywood Records, Inc. a derivative of Walt Disney shareholders donated significant amounts to Second Mile Charity. Plaintiffs state a one [sic] Robert Nilram (aka Robert Marlin, Robert

6

> Beaulieu and countless other aliases and his supposed wife Dawn Taylor, Theresa Haubrick (daughter of Dawn Taylor, and wife of MMA fighter Bryce Haubrick), procured her minor committed perjury, and took her Lewistown Pennsylvania holding her hostage for eight years. Boehm and Nilram are also involved what appears to be stealing wills and estates (see attached). They then deliberately mixed her name with Kristal Melisa Marshall from WWF in order to conceal her minor in Pennsylvania.

Dkt. 60 at 4-5.

As for the remaining claims, none of them mentions Hollywood Records, Inc. or identifies any factual basis for finding this defendant liable. Accordingly, Hollywood Records, Inc.'s motion to dismiss will be granted. And because plaintiffs identify no basis upon which they could amend the complaint to state a valid claim against Hollywood Records, the dismissal will be with prejudice.

**V. Bob Adams (Dkt. 51)**

Defendant Bob Adams moves for a more definite statement of the claims against him, pursuant to Fed. R. Civ. P. 12(e). Plaintiffs have not responded to the motion.

Under Rule 12(e), a party is entitled to a more definite statement if the allegations are "so vague or ambiguous that the party cannot reasonably prepare a response." *Id*. The court finds defendant Adams is entitled to relief under this rule. With respect to Adams, the "Facts" section of the complaint alleges that when Davison returned to the Dueling Piano Bar after being kicked out for some sort of disturbance, he "was placed under false arrest by Defendant Adams without an interpreter for the hearing impaired; and taken to be drugged under false pretenses…." (Dkt. 1 at 7). The complaint fails to state in plain terms the circumstances under which Adams arrested Davison or the basis upon which Adams is claimed to be liable.

Davison will be granted until December 28, 2017, to file an amended complaint that alleges facts sufficient to explain his claim against defendant Adams.

**VI. Wichita City Council (Dkt. 53)**

The complaint names the "City of Wichita City Council" as a defendant. The City Council now moves for dismissal pursuant to Fed. R. Civ. P. 17(b), arguing it is not a legal entity capable of being sued. Plaintiffs argue in response that federal law permits "a cause of action for ADA violations against the City of Wichita." (Dkt. 69 at 2).

It is apparent that plaintiffs attempted to sue the City of Wichita but instead named the Wichita City Council as a defendant. Even if the court were to consider the complaint as effectively naming the City of Wichita, it is clear for reasons previously stated that the complaint fails to state a claim upon which relief can be granted. The only count making any allegation against the City is the conspiracy count, which alleges that the City Council and Sedgwick County "acted in agreement to cover-up illegal activities involving Wells Fargo Bank, Adams Family Financial Group of Wells Fargo Advisors, LLC, Keller Williams & Realty, First Century Bank, N.A., certain approved business contractual services providing to the public and residents of the state of Kansas; county of [Sedgwick], and city of Wichita; formulated a plan to injure the Plaintiffs…." (Dkt. 1 at 13). The complaint goes on to allege a conspiracy "to conceal the criminal complaints [apparently filed by plaintiffs]; and suppress the press; obstructed justice, and outright refusal to even bother to launch any investigation, thus cooperated in misprisions; and continued in covering up problem of sexual assault in battery

8

crimes in the city, county, and state levels, and problems of depriving disabled of their rights, and depriving victims' rights." (*Id*).

To the extent any of these allegations are coherent, they fail to state any possible valid claim for relief against the City of Wichita or the Wichita City Council. Accordingly the motion to dismiss will be granted without prejudice.

### VII. Catherine Leslie and Cotillion Ballroom (Dkt. 55)

Leslie and the Cotillion move to dismiss for failure to make timely service and for failure to state a claim upon which relief can be granted. Leslie points out that, aside from the conspiracy count, none of the other counts mentions her or alleges that she engaged in any wrongful conduct. She argues these counts fail to provide fair notice of the claims as required by Fed. R. Civ. P. 8(a). The court generally agrees. The complaint borders on incoherence at times and refers generically to "defendants" without making clear what particular defendants are alleged to have done. Count One fails to state a claim for reasons that will be discussed *infra*. Counts Two, Three, Five, and Six allege no facts to support liability against Leslie. As for Count Four, the conspiracy count, those allegations fail to state a valid claim against any of the defendants for reasons previously indicated. The court will therefore grant the motion to dismiss as to defendant Leslie.

The Cotillion argues Count One fails to state a claim for relief against it under the ADA. It argues plaintiffs have not alleged themselves to be disabled within the meaning of the ADA and they fail to offer facts showing that the Cotillion employed a discriminatory policy or failed to make a reasonable accommodation.

9

Under § 12182, the owner, lessor, lessee, or operator of a public accommodation may be liable if it discriminates against an individual on the basis of disability in the full and equal enjoyment of its goods, services, facilities, or accommodations. The term "disability" under the ADA refers to an individual with a physical or mental impairment that substantially limits a major life activity; who has a record of such impairment; or who is regarded as having such an impairment. 42 U.S.C. § 12102(2).

Under a liberal construction of the allegations in the complaint, plaintiffs have sufficiently alleged that Marshall is disabled within the meaning of the ADA and that Leslie is the owner or operator of the Cotillion, a public accommodation. But the allegations fail to show how Leslie or the Cotillion discriminated against Marshall on the basis of her disability. Cotillion staff allegedly erected a metal barrier "blocking … bathroom facilities" and other areas of the facility, but the complaint does not explain whether other bathroom facilities were available, whether another access point to bathroom facilities was available, or how a barrier apparently affecting all patrons constituted discrimination against Marshall on account of her disability. The court concludes that Count One fails to state a claim for relief against Leslie or the Cotillion.

Count Two alleges generally that seven unidentified Cotillion employees assaulted or battered Marshall, but the complaint only makes specific allegations about two such employees, identified as Molly Doe and Female Doe. It alleges that both of them assisted in pushing or restraining Marshall, and that one or both kicked her, flipped her on her back, and then pulled her shirt up exposing her breasts. These allegations would be sufficient to state a claim for assault or battery against these two

10

individual Cotillion employees, but they have not been identified or served with the complaint. As for the Cotillion, the complaint fails to allege facts to show that it is liable for any such assault or battery by its employees. *See Williams v. Community Drive-In Theater, Inc.*, 214 Kan. 359, 520 P.2d 1296 (1974) (if assault is committed by employee while furthering employer's interest in some way, the employer is liable under *respondeat superior*). Count Two therefore fails to state a valid claim for relief against the Cotillion. Counts Three, Five, and Six do not mention the Cotillion and fail to allege facts supporting any claim against it. Count Four fails for reasons previously stated. Accordingly, the court finds that the Cotillion's motion to dismiss for failure to state a claim should be granted without prejudice.

**VIII. Dueling Piano Bar (Dkt. 57)**

Dueling Piano Bar, otherwise known as EB Management Company, LLC, moves to dismiss the complaint for plaintiffs' failure to serve process within 90 days of filing the complaint. *See* Fed. R. Civ. P. 12(b)(5).

Rule 4(m) provides in part that that if a defendant is not served within 90 days after the complaint is filed, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." It further provides that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id*.

Plaintiffs filed the complaint and sought to proceed *in forma pauperis* on April 24, 2017. (Dkts. 1, 3). The motion to proceed IFP was granted May 23, 2017. (Dkt. 5). Due to an interlocutory appeal filed by plaintiffs and their objection to the Magistrate's

11

recommendation to dismiss certain defendants, however, the court did not issue summonses to the U.S. Marshals for service until September 1, 2017. Dueling Piano Bar was served on September 13, 2017. (Dkt. 24).

Although service was clearly not made within the 90 day period provided by Rule 4(m), the court concludes the period for service should be extended to permit the September 13th service on this defendant to stand. In this instance, a substantial period of delay was due to the court's withholding of summonses until after the Magistrate's initial rulings were reviewed. The court's procedures concerning issuance of summonses in *pro se* cases was thus a contributing factor and amounts to good cause for the delay. Given plaintiff's *pro se* status, the court's contribution to the delay, and the absence of any indication of prejudice to the defendant, the court finds that the time for service should be extended as indicated above, and that Dueling Piano Bar's motion to dismiss should be denied.

**IX. Plaintiffs' Motion to Disqualify Counsel (Dkt. 58)**

Plaintiffs "object to the appointment of Attorney Hinkley [sic] as this is a prejudicial conflict of interest violating the laws of ethics…." (Dkt. 58 at 1). This is an apparent reference to attorneys from the Hinkle Law Firm representing the Breaking Benjamin defendants, although the court has no idea what conflict plaintiffs are talking about and finds no such conflict in the record. Plaintiffs' request to disqualify these attorneys is denied.

### X. Plaintiffs' Motion to Add Parties (Dkt. 63)

This motion seeks to add Lance E. Shuman, Hollis Clark, Jr., and Salvatore Erna, Jr. as defendants in the case. (Dkt. 63 at 2). Plaintiffs allege that Clark owes Marshall child support payments (Dkt. 63 at 1) and Erna is allegedly a member of the band Godsmack, which has toured with Breaking Benjamin. (*Id*. at 2). Shuman is allegedly an employee of the Cotillion and is "a personal direct friend of Catherine Leslie … indicating the acts imposed on Plaintiffs was [sic] coordinated and deliberate preplanned acts." (*Id*.). Plaintiffs have shown no basis for joining these persons as defendants or asserting claims against them in this action. The motion is accordingly denied.

### XI. Plaintiffs' Motion to Enter Evidence (Dkt. 62)

Plaintiffs "request entering evidence from Wesley Healthcare…." (Dkt. 62 at 1). They apparently attempted to file with the clerk of court a CD-ROM containing evidence of Marshall's and Davison's medical conditions, as well as certain police records, but were allegedly informed that "computer evidence is not allowed." They also make various complaints about the Wichita Police Department. (*Id*. at 2).

The court finds the motion should be denied. Exhibits may be attached to motions if relevant, but the local rules of this court generally require that they be submitted in electronic form (as plaintiffs have done with the instant motion). D. Kan. R. 5.4.5(a). Plaintiffs' motion shows no grounds for relief.

**IT IS THEREFORE ORDERED** this 14th day of December, 2017, that the Motion to Dismiss of the Breaking Benjamin defendants (Aaron Bruch, Benjamin Burnley,

Shaun Foist, Jason Rauch, and Keith Wallen) (Dkt. 42) is GRANTED. The claims against these defendants are dismissed with prejudice;

Hollywood Records, Inc.'s Motion to Dismiss (Dkt. 47) is GRANTED. The claims against this defendant are dismissed with prejudice;

Bob Adams's Motion for More Definite Statement (Dkt. 52) is GRANTED;

Wichita City Council's Motion to Dismiss (Dkt. 53) is GRANTED. The claims against this defendant are dismissed without prejudice;

Catherine Leslie's and Cotillion Ballroom's Motion to Dismiss (Dkt. 55) is GRANTED. The claims against these defendants are dismissed without prejudice;

Any amended complaint by plaintiffs correcting the foregoing deficiencies shall be filed by December 28, 2017;

Dueling Piano Bar's Motion to Dismiss (Dkt. 57) is DENIED;

Plaintiffs' Motions to Disqualify Counsel (Dkt. 58), to Amend the Complaint (Dkt. 61), for Discovery (Dkt. 62) and to Add Parties (Dkt. 63) are DENIED.

                                              ___s/ J. Thomas Marten_____
                                              J. THOMAS MARTEN, JUDGE